## Murphey's Executrix v. Clinkinger et al.

(Decided May 31, 1932.)

GARDNER & McDONALD, W. H. HESTER, T. J. MURPHEY and F. B. MARTIN for appellant.

JOHNSTON & WYMAN, R. E. JOHNSTON, W. H. HYMAN and HENRY S. BALLARD for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Mrs. Georgia Murphey, as administratrix of her deceased husband, A. H. Murphey, instituted this action in the Graves circuit court against Roy Clinkinger and Mary Clinkinger, husband and wife, seeking to recover damages for the death of her husband alleged to have been caused and brought about by the negligence of defendants in the operation of their automobile. The jury returned a verdict for the defendants, and, from judg-

ment pursuant thereto dismissing her petition, plaintiff has appealed.

At the outset of their brief, attorneys for appellant state that the only errors insisted upon as grounds for reversal of the lower court's judgment are: (1) That the verdict for the defendants is not sustained by sufficient or any evidence and is contrary to and flagrantly against the evidence; (2) that the court erred in instructions given to the jury; (3) that the court erred in refusing to give instructions offered by appellant.

While we have read the entire record, we find upon an examination of brief for appellant that the evidence offered on behalf of the respective parties is so clearly, fairly, and yet so tersely presented, that, in the statement of facts, we shall refer to that brief rather than to the record. It is stated in the brief that the material questions about which there is a conflict in evidence are the speed of the car, the giving of signals by appellees, whether the bus started and how far it had gone before appellees' car met and passed it, at what point appellee applied the brakes, and where their automobile stopped after the collision.

The evidence shows that A. H. Murphey, a minister of the gospel, lived in the northern part of Graves county, his residence being situated about 65 yards east of United States highway 45 with a private road leading from the highway thereto. He owned and operated a farm, and his earnings amounted to about $800 per year. At the time of his death he was over 71 years of age, but was physically sound and very active for a man of that age. On the date of the accident, he was returning from Marshall county, having boarded a bus of the Smith Motor Coach Company at Paducah. About 1 p. m. the bus reached a point on the highway opposite the home of deceased and stopped to permit him to alight. The automobile was approaching from the opposite direction, and, as we gather from the evidence, was from 500 to 800 feet from the bus when deceased alighted.

On the question of signals given by appellees, Carl Holt, J. P. Collins, and Malcolm Henderson, passengers on the bus testified that they heard no signals. Hicks Ray, who was walking on the highway about 75 yards north of where the collision occurred, and who stated that he saw the automobile and thought there was

going to be a collision, testified that he never at any time heard any sound of the horn or other signal. Mrs. Julia Edwards, who was in the room of the Murphey home next to the highway, saw appellees' car approaching the scene of the accident, but who did not see the accident, because, at that point her view was obstructed, testified that she heard no signal, but did hear the noise of the collision.

As to the speed of the automobile, Carl Holt, J. P. Collins, Malcolm Henderson, and Hicks Ray testified that it was traveling at a rapid rate, their various estimates being from 40 to 50 miles per hour. Evidence for appellant further tends to show that, as indicated by skid marks on the paved highway, the automobile traveled 62 feet after the brakes were applied and ran off the road into a ditch embedding the front tires in an embankment. It is further in evidence for appellant that Mr. Murphey's body was badly broken and crushed by the force of the impact and remained on the radiator or bumper of the automobile until it struck the embankment and was then thrown ahead a distance of about 20 feet.

Roy Clinkinger, who was driving the automobile, testified that he saw the bus standing on the side of the highway and knew that it had stopped to discharge passengers; that he immediately began sounding his horn and continued to do so until he reached the bus, but did not know whether he continued to sound the horn until he struck Mr. Murphey. He stated further that in approaching the bus he took his foot off the accelerator and slackened the speed of his automobile, and he gave as his opinion that when he passed the bus he was going 15 or 20 miles per hour. It is shown, however, that shortly after the accident, at an examining trial in a criminal proceeding, he stated that the car was running 35 to 38 miles per hour. Mrs. Clinkinger stated that she did not see the bus until within a very short distance of it, fixing the distance at about the length of the courtroom, but stated that the automobile slowed down before it struck Mr. Murphey. H. N. Rogers, driver of the bus, testified that the automobile was going about 30 or 35 miles per hour when he first saw it, but gave as his opinion that it slowed down and was not going over 25 miles when it passed the bus. Elizabeth Perin testified that when the automobile passed the bus it was going about

35 miles per hour. In addition to the evidence of Roy Clinkinger that he was sounding his horn, Rogers, the driver of the bus, testified that he saw the automobile coming and heard the horn blowing, and Miss Perin testified that her attention was attracted to the automobile by the blowing of the horn, as she expressed it, "the terribly loud blowing of the horn."

The evidence shows that when Mr. Murphey alighted, he started walking toward the rear end of the bus, and there is confusion and conflict of evidence as to when the bus started up and how far it had gone before the accident occurred. The driver of the bus stated that he noticed Mr. Murphey until he walked to the rear end and he then started the bus and had gone about 50 or 75 feet when he was told that the accident had occurred. Some witnesses stated that the bus was about to start or had started when the accident occurred and a number of others testified that it had gone some little distance. None of the passengers on the bus testified to having seen the automobile strike Mr. Murphey, but Mr. Ray, who was walking toward the place of the accident, stated that, when the bus stopped and Mr. Murphey got off, the bus pulled on, Mr. Murphey walked around it, the automobile was coming the other way, and they just met there. When asked how far the bus had proceeded when the collision occurred, he stated that the bus had gone something like 35 or 40 yards.

Over against evidence for appellant that the automobile had run 62 feet after the brakes were applied, as shown by skid marks, there is evidence for appellees that the skid marks did not extend over 25 or 30 feet. Steve Roberts, deputy sheriff of Graves county, who was at the scene about 10 minutes after the accident happened, testified that he made observations and measurements of the skid marks, and that they extended 25 feet, and that the imprint in the embankment where the automobile stopped was about half the width of the automobile tire.

The conflicting evidence as to the acts and conduct of appellees and of Mr. Murphey made an issue for the jury and left for them to determine the causes contributing to the death of the latter. While there is much evidence indicating that the automobile in approaching and passing the bus was being driven at a dangerous and improper speed, without any warning of its approach or observance by the driver of duties owed to others on or

near the highway, there is, on the other hand, substantial evidence to the contrary, which tends also to indicate that Mr. Murphey, in a moment of abstraction and without the exercise of his faculties of sight and hearing, walked suddenly into the path of the on-coming vehicle. In such circumstances, the verdict of the jury is conclusive and will not be disturbed on appeal if the instructions substantially state the law of the case. Waitman v. Marksberry, 200 Ky. 1, 254 S. W. 432; Security Finance Co. v. Cook & Son, 223 Ky. 124, 3 S. W. (2d) 187; Knoxville Tinware Mfg. Co. v. American Safety Mine Appliance Co., 231 Ky. 282, 21 S. W. (2d) 451.

The greater portion of appellant's brief is devoted to argument that the instructions given by the court did not fairly submit to the jury the issues in the case, and that the court erred in that particular as well as in not giving instructions offered by appellant or instructions on phases of the case embodied in the instructions offered by appellant and refused by the court. It is urged that the instructions are too abstract and general in form and do not with sufficient particularity deal with the situation as developed by proven facts and reasonable inferences necessarily arising therefrom.

We find, from examination of instruction "A" given by the court, that it is in substance and effect the same as instruction No. 1 offered by appellant, except that the former does not include that part of the latter which reads:

"Where such highway was outside of a closely built up section of any city or town, or the residence portion of any city or town, and was on a straightaway, unobstructed highway, if the rate of speed of his automobile thereon exceeded 40 miles an hour, it shall be prima facie evidence of unreasonable and improper driving."

But the instruction given did make it the duty of the driver of the automobile in passing the bus from which appellant's decedent alighted not to exceed 30 miles per hour, and directed a finding for appellant if he failed in that duty. As we see it, the instruction given is less confusing and is certainly more favorable to appellant than the one offered. Neither the given or offered instruction imposed a lookout duty upon appellees, but this duty was imposed by instruction No. 9 offered by appellant. While

in cases of this character the instruction defining the duties of the operator of a motor vehicle and authorizing a recovery for nonobservance thereof usually includes the duty of keeping a lookout, however, if the instructions as a whole fairly and substantially present the issues to the jury, and an omission in one instruction is cured by other instructions, they will not be condemned. Under other instructions given, the jury could not find for appellees if they believed from the evidence that appellees discovered, or by the exercise of ordinary care could have discovered or perceived, the presence or danger of appellant's decedent at the time and place of the accident.

The court did not err in refusing to give instruction No. 9 offered by appellant, since the instructions given submitted to the jury every issue made by proof and embodied therein.

While instruction "C" on "sudden appearance" given by the court comes under severe criticism of counsel, there is no escape from the conclusion that the evidence fully justified, and, in fact, necessitated, the giving of such instruction. It fairly submitted to the jury that theory of the case.

Finding nothing in the record to warrant a reversal, the judgment is affirmed.